**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Keith Henderson,　　　　　　　　　　　　　　　　　Civ. No. 18-2828 (MJD/BRT)

　　　　　　　Petitioner,

v.
　　　　　　　　　　　　　　　　　　　　　　　　**REPORT AND**
Eddie Miles, Warden, MCF-Stillwater,　　　　　　**RECOMMENDATION**

　　　　　　　Respondent.

Zachary A. Longsdorf, Esq., Longdsorf Law Firm, PLC, counsel for Petitioner.

Brittany D. Lawonn, Esq., Assistant County Attorney, Hennepin County Attorney's Office, counsel for Respondent.

BECKY R. THORSON, United States Magistrate Judge.

　　　Petitioner Keith Henderson is serving a life sentence for first-degree murder, plus a five month consecutive sentence for committing a crime for the benefit of a gang. He seeks relief in federal court pursuant to a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. No. 1, Habeas Pet.) Respondent Eddie Miles moves to dismiss. (Doc. No. 11.) For the reasons stated below, this Court recommends that Respondent's motion to dismiss be granted.

**I.　　Background**

　　　**A.　　Petitioner's Trial and Direct Appeal**

　　　Petitioner was convicted of murdering Juwan Gatlin, a fellow member of a street gang called the Mickey Cobras. *State v. Henderson*, 620 N.W.2d 688, 692–93 (Minn.

2001) ("*Henderson I*"). Gatlin was shot to death at approximately 11:00 a.m. on August 7, 1998, in an alley near Logan Avenue in Minneapolis. *Id.* at 693. He was shot between thirteen and fifteen times with a .40 caliber Smith and Wesson handgun. *Id.*

At trial, Herbert Williams, a member of the Mickey Cobras, testified to a conversation he had with Donte Evans regarding Evans's participation in the Gatlin murder. *Henderson I*, 620 N.W.2d at 694. According to Williams, Evans told him, "T, we got away with it * * * we got [Gatlin], we got [Gatlin]."[1] Evans described to Williams how he, Petitioner, and Daryl McKee went to the back of April Bell's house,[2] that Petitioner pulled out the gun and shot Gatlin and then passed the gun to Evans. Evans told Williams that Gatlin, still alive, said "I'm dead, T, I'm dead." *Id.* at 694–95. Evans then told Williams that he shot Gatlin five times in the head. *Id.* at 695.

Dedra Johnson, a former girlfriend of Gatlin and a neighbor of Petitioner, testified that Petitioner told her, "I did it" in reference to Gatlin's murder, but after seeing the shock on Johnson's face, Petitioner told her he was joking. *Henderson I*, 620 N.W.2d at 695. Johnson testified before the grand jury that Petitioner told her he shot Gatlin after pushing him in an alley. *Id.* When Johnson recanted this testimony at trial, the court allowed the prosecution to admit Johnson's grand jury testimony as substantive evidence. *Id.*

---

[1]   "T" was a slang reference for fellow gang members. *Henderson I*, 620 N.W.2d at 694 n.3.

[2]   April Bell ("Bell") lived in a house in Minneapolis with her mother Melanie Bell. *Henderson I*, 620 N.W.2d at 693. Bell was a member of the Mickey Cobras. The Bell residence was one block from where Gatlin's body was found. *Id.*

2

Paul Givens testified that while in jail with Petitioner, Petitioner told him that he pushed a guy over in an alley and shot him in the leg, arm, and head. *Henderson I*, 620 N.W.2d at 695. Givens testified that Petitioner told him the victim said, "don't shoot me no more. I'm already dead." *Id.* Although Givens had been declared incompetent to stand trial due to marginal intellectual capacity and dementia from severe head trauma, the district court found him competent to testify in Petitioner's case. *Id.*

The jury found Petitioner guilty of first-degree murder and a crime for the benefit of a gang. *Henderson I*, 620 N.W.2d at 695. He was sentenced to life in prison on the murder count and five years on the benefit-of-a-gang count, to be served consecutively. On January 11, 2001, the Minnesota Supreme Court affirmed Petitioner's conviction on direct appeal. *See id.*

### B.    Petitioner's 2016 Petition for Postconviction Relief in State Court is Dismissed as Untimely

On May 27, 2016, Petitioner filed a petition for postconviction relief in state court. *See Henderson v. State*, 906 N.W.2d 501, 505 (Minn. 2018) ("*Henderson III*").[3] Petitioner raised claims based on an affidavit from Rajab "Shorty" Jabbar that Petitioner claimed impeached Williams's testimony regarding Williams's motivation to testify and alleged an alternative perpetrator of Gatlin's murder. (Doc. No. 12, App'x Vol. I at 322.) Petitioner alleges that the "most damaging" evidence against him came from Williams,

---

[3]    This was Petitioner's third state court petition. *See Henderson v. State*, 675 N.W.2d 318 (Minn. 2004) ("*Henderson II*"); (Doc. No. 12-1, App'x Vol. II at 4309.) The claims raised in Petitioner's first and second state court petitions are not relevant to this action.

who testified, as noted above, that Evans told him that Evans, Petitioner, and another individual killed Gatlin. Evans died before trial, and over Petitioner's objection, the state court allowed Williams to testify about what Evans allegedly told him, holding that Evans's statement was against his penal interest and that Williams's testimony had indicators of reliability because he claimed to have given police information to protect his friend Rajab Jabbar. According to the prosecution's argument, Williams feared Jabbar was in danger because of information Jabbar had given in an earlier case involving the murder of an individual nicknamed "Steezo." In prison, Petitioner ran into Jabbar, and Jabbar told Petitioner that Williams, not Jabbar, had informed police in the Steezo case. Jabbar further stated that he was with Williams and Evans when Evans allegedly implicated Petitioner, and according to Jabbar, Evans did not implicate Petitioner. Instead, it was Williams who told Jabbar that he (Williams), Evans, and another individual committed the murder and got away with it. (*See* Habeas Pet., Ground One.)

Petitioner also raised claims based on an affidavit from Willie Scott. Petitioner met Scott in prison in late 2015. Scott explained that he saw a newspaper article about Andrew Neal being a confidential informant and then met Neal in prison in St. Cloud. According to Scott, Neal stated that Petitioner did not actually confess to killing Gatlin. Neal explained that he tried to implicate Petitioner in the crime, but the police wanted to hear a confession. Neal knew that he could not get a confession from Petitioner, so he told Dedra Johnson that Petitioner committed the crime and told her that when he brought her cousin Therian over, Dedra needed to tell him that Petitioner had confessed to committing the crime. At trial, Johnson testified that Petitioner did not confess, and the

prosecution impeached Johnson with her grand jury testimony that Petitioner did confess to her. (*See* Habeas Pet., Ground Three.)

Petitioner argued that the Jabbar and Scott affidavits were newly discovered evidence and evidence of false testimony. *Henderson III*, 906 N.W.2d at 505. Petitioner additionally argued that the newly discovered evidence was evidence of a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), or in the alternative, demonstrated an ineffective-assistance-of-counsel claim. *See id.* The district court denied relief on November 30, 2016, and on January 31, 2018, the Minnesota Supreme Court affirmed. *Id.* at 503, 508. The court found that the petition was untimely because it was not filed within two years of the conviction becoming final, as required by Minnesota law. *Id.* at 505 (citing Minn. Stat. § 590.01, subd. 4.) The court also found that the affidavits did not meet the newly-discovered-evidence exception to the Minnesota statute of limitations. *Id.* at 506 (citing Minn. Stat. § 590.01, subd. 4(b)(2)). The court reasoned that the facts alleged in the affidavits did not meet the exception's requirement that the evidence would establish Petitioner's innocence by a clear and convincing standard. *Id.* The court reasoned:

> Even accepting the affidavits of [Jabbar] and [Scott] as true, the facts alleged in Henderson's petition are legally insufficient to show his innocence by a clear and convincing standard. At most, [Scott]'s affidavit shows that [Andrew Neal] lied to [Dedra Johnson]. It does not call into question [Johnson]'s credibility or her testimony that Henderson told her he 'did it' when referring to Gatlin's murder. Similarly, [Jabbar]'s affidavit states only that [Herbert Williams] was also involved in the murder. It does not exculpate Henderson because multiple people were involved in Gatlin's murder.

5

> Moreover, other evidence of Henderson's guilt remains regardless of whether the affidavits are true. The evidence does not affect [April Bell]'s testimony that Henderson was at the murder scene, [April Bell]'s mother's testimony that Henderson helped dispose of the gun, [April Bell]'s cousin's testimony that Henderson encouraged others to lie to police about his whereabouts at the time Gatlin was killed, or Henderson's inculpatory statements to [Paul Givens] about details of the murder.

*Henderson III*, 906 N.W.2d at 507–08 (internal citations omitted). Petitioner petitioned for a writ of certiorari, which was denied on October 1, 2018. (Doc. No. 12, App'x Vol. I at 32, 385.)

### C. Petitioner's Request for Federal Habeas Relief

Petitioner filed this action on October 2, 2018. (*See* Habeas Pet.) Petitioner asserts three claims for relief in his petition: (1) the prosecution's failure to provide newly-discovered exculpatory evidence before trial, as set forth in the Jabbar Affidavit, violated *Brady v. Maryland*, 373 U.S. 83 (1963); (2) as an alternative to the *Brady* claim, if the newly-discovered evidence in the Jabbar Affidavit was known to Petitioner's counsel, Petitioner received ineffective assistance of counsel at trial when counsel failed to use that evidence at trial; and (3) the state court made an unreasonable determination of fact regarding newly-discovered evidence set forth in the Scott Affidavit that he did not confess to murdering Gatlin. (Doc. No. 1, Habeas Pet.) This Court concludes the petition should be dismissed because Petitioner's claims are procedurally defaulted. In the alternative, this Court also concludes that Petitioner's first two claims are untimely under the one-year limitations period set forth in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), and Petitioner's third claim does not present a cognizable claim for review in this federal habeas action.

## II. Analysis

### A. Procedural Default and Exhaustion

Procedural default and exhaustion are distinct but related concepts. Before seeking a federal writ of habeas corpus, a state prisoner must generally exhaust available state remedies. 28 U.S.C. § 2254(b)(1)(A). This requirement gives the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.*; *see also O'Sullivan v. Boerckel*, 535 U.S. 838, 845 (1999). "If a prisoner has not presented his habeas claims to the state court, the claims are defaulted if a state procedural rule precludes him from raising the issues now." *Middleton v. Roper*, 455 F.3d 838, 855 (8th Cir. 2006).

The exhaustion requirement is satisfied if a procedural bar precludes further proceedings in state court. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) (explaining that because the exhaustion requirement "refers only to remedies still available at the time of the federal petition," the exhaustion requirement "is satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law"). However, while the exhaustion requirement is satisfied in that instance, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the

7

defaulted claim." *Id.* at 162 (citing *Teague v. Lane*, 489 U.S. 288 (1989) and *Wainright v. Sykes*, 433 U.S. 72 (1977)).

Procedural default may be excused if the petition alleges facts to demonstrate that: (1) there exists cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) failure to consider the claim will result in a fundamental miscarriage of justice, as in actual innocence. *See Weaver v. Kelly*, Case No. 1:18-cv-01048, 2019 WL 2134617, at *3 (W.D. Ark. Apr. 24, 2019) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

### B.     Petitioner's Claims are Procedurally Defaulted

Petitioner's claims are premised upon the Jabbar and Scott affidavits. (*See* Doc. No. 16, Ex. 1, Affidavit of Rajab Jabbar ("Jabbar Aff."); Ex. 2, Affidavit of Willie Scott ("Scott Aff.").) In state court, as noted above, Petitioner argued that these affidavits were newly-discovered evidence and evidence of false testimony. *Henderson III*, 906 N.W.2d at 505. Petitioner also argued that the newly discovered evidence established a *Brady* violation, or in the alternative, demonstrated that his trial counsel was ineffective. *Id.* The postconviction court found that Petitioner's action was untimely and failed to satisfy the newly-discovered-evidence exception to untimeliness under Minnesota state law. *See id.* (citing Minn. Stat. § 590.01, subd. 4(b)(2)). The Minnesota Supreme Court affirmed, finding that facts alleged in the petition were legally insufficient to satisfy the requirement to establish the existence of evidence which, if true, would establish Petitioner's innocence by clear and convincing evidence. *Id.* at 506. Accordingly, Petitioner's claims are procedurally defaulted because they were found to be untimely

8

under Minnesota state law. Respondent argues that only ground two—Petitioner's ineffective assistance of counsel claim—is procedurally defaulted. (Doc. No. 10, Resp't's Mem. 19–20.) To the contrary, this Court concludes that all of Petitioner's claims are procedurally defaulted. The Minnesota Supreme Court refused to consider the merits of any of Petitioner's claims. *See Henderson III*, 906 N.W.2d at 508 n.7.

Petitioner argues that the procedural bar applied by the Minnesota courts is not an independent and adequate basis to cause the forfeiture of his claims in federal court. (Doc. No. 27, Pet'r's Mem. 27–30.) Procedural default of a claim under state law may constitute an independent and adequate state ground to bar consideration in federal court, but only if the state procedural rule is firmly established, regularly followed, and readily ascertainable. *White v. Bowersox*, 206 F.3d 776, 780 (8th Cir. 2000). The Supreme Court has stressed that "a state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed.'" *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982) (quoting *Barr v. City of Columbia*, 378 U.S. 146, 149 (1964)). In addition, state courts "may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims." *Id.* Thus, the "relevant inquiry" is to "determine if the rule is strictly or regularly followed," and then to "determine if the rule has been applied evenhandedly to all similar claims." *Echols v. Kemna*, 511 F.3d 783, 786 (8th Cir. 2007).

In support of his argument, Petitioner cites Minnesota cases that did not apply or disregarded the limitations period in Minn. Stat. § 590.01, subd. 4(a). *See, e.g.*, *Vang v. State*, 788 N.W.2d 111, 114 (Minn. 2010) (declining to time bar a petition under

9

§ 590.01, subd. 4(a), where petitioner's sentence was void due to lack of subject-matter jurisdiction); *Carlton v. State*, 816 N.W.2d 590, 623 n.3 (Minn. 2012) (Page, J. dissenting) (providing a list of cases in which the Minnesota Supreme Court "reviewed the merits of appeals that were deemed untimely for one reason or another"). Even though the limitations period has not been applied in a variety of contexts for a variety of reasons, it does not follow that the rule is inadequate to bar federal review in the instant case. *See White v. Minnesota*, Civil No. 14-3459 (ADM/BRT), 2015 WL 5672984, at *2 (D. Minn. Sept. 23, 2015) (stating that the court is "satisfied" that the limitations period is "firmly established and regularly followed") (collecting cases).

Moreover, the correct inquiry in this case is whether the *exception* to the limitations period set forth in subdivision 4(b)(2), in particular the requirement that the newly-discovered evidence "establishes by a clear and convincing standard that the petitioner is innocent of the offense or offenses for which the petitioner was convicted," is "strictly or regularly followed," and is "applied evenhandedly to all similar claims." Several cases have found the exception not satisfied because the newly-discovered evidence did not establish innocence under the clear and convincing standard. *See, e.g.*, *Rhodes v. State*, 875 N.W.2d 779, 788 (Minn. 2016) ("We conclude that, even if the scientific evidence alleged in Rhodes's fourth petition were proven to be true at an evidentiary hearing, it would not satisfy the innocence prong of the newly-discovered-evidence exception."); *Scott v. State*, 788 N.W.2d 497, 502 (Minn. 2010) (concluding that evidence did not establish the defendant's innocence by a clear and convincing standard because "there was still a significant amount of properly admitted evidence supporting

10

[his] guilt"). Therefore, the exception is regularly followed and applied to bar claims, such as those brought by Petitioner, based on newly-discovered evidence that does not establish innocence under the clear and convincing standard. *See, e.g.*, *Echols*, 511 F.3d at 788 (finding a state procedural rule adequate to bar petitioner from federal habeas relief because "the rule is applied consistently to similarly situated defendants").

Based on the foregoing, this Court concludes that Petitioner's claims are procedurally defaulted.

### C. Procedural Default Will Not Result in a Fundamental Miscarriage of Justice

Petitioner argues that his claims should be considered because if they are procedurally defaulted, it would result in a fundamental miscarriage of justice. (Pet'r's Mem. 30–33.) To satisfy this exception to the procedural bar against defaulted claims, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011). "First, the petitioner's allegations of constitutional error must be supported with new reliable evidence that was not presented at trial. Second, the petitioner must establish that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997).

As explained by the Minnesota Supreme Court, Petitioner's newly-discovered evidence does not undermine evidence of Petitioner's guilt, such as testimony about his presence at the crime scene, that he helped dispose of the murder weapon, that he encouraged others to lie about his whereabouts, and that he made inculpatory statements.

*Henderson III*, 906 N.W.2d at 507–08. Petitioner's evidence does not establish actual innocence. "Due to important comity and finality interests, the actual innocence gateway is very limited. Few petitions are 'within the narrow class of cases implicating a fundamental miscarriage of justice.'" *Weeks*, 119 F.3d at 1351 (quoting *Schlup v. Delo*, 513 U.S. 298, 315 (1995)).

Therefore, the procedural default of Petitioner's claims would not result in a fundamental miscarriage of justice.

### D. Petitioner's First Two Claims are Untimely Under the AEDPA

The AEDPA establishes a one-year limitations period that begins to run from the latest of a series of dates, including, as relevant here, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A), and "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," § 2244(d)(1)(D). Respondent argues, and this Court agrees, that Petitioner's *Brady* and ineffective assistance of counsel claims are untimely, whether the limitations period begins to run based on either of these provisions. (Resp't's Mem. 12–16.)

In response, Petitioner argues that the untimeliness of these claims should be excused because he can make a showing of actual innocence. (Pet'r's Mem. 22–24); *see McQuiggin v. Perkins*, 133 S. Ct. 1924, 1935–36 (2013) (holding that a *Schlup* actual innocence showing provides a gateway past the AEDPA statute of limitations). As discussed above, however, Petitioner's newly-discovered evidence falls short of demonstrating actual innocence.

### E.      Petitioner's Claim that the State Court Made an Unreasonable Determination of Fact

Petitioner's third claim is that the state court made an "unreasonable determination of fact" regarding the newly-discovered evidence in relation to his confession. This claim seems to take issue with the state court's conclusion that the newly-discovered Scott Affidavit, even if presumed to be true, does not establish Petitioner's innocence by clear and convincing evidence.

As discussed above, this Court concludes that all three of Petitioner's claims are procedurally defaulted. An additional problem with this claim, however, is that it does not appear to be tied to an independent constitutional violation that occurred at Petitioner's trial. *See Herrerra v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for habeas relief absent an independent constitutional violation occurring in the *underlying state criminal proceeding*.") (emphasis added). Moreover, to the extent that Petitioner may be arguing that his due process rights were violated during the postconviction proceedings, procedural violations during state collateral proceedings are issues unrelated to the cause of detention and cannot form the basis for habeas relief. *See Johnson v. Florida Dep't of Corr. Sec'y*, Case No. 4:17cv93/WS/EMT, 2018 WL 3056700, at *3 (N.D. Fla. May 16, 2018) (collecting cases); *see also Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir. 1990); *Williams v. State*, 640 F.2d 140, 143–44 (8th Cir. 1981) ("[I]nfirmities in the state's post-conviction proceeding do not . . . render a prisoner's

13

detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings.").

Therefore, even if not procedurally defaulted, Petitioner's third claim would fail on the merits.

## III. Certificate of Appealability

Finally, this Court notes that a § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A COA should not be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a habeas petition is denied on procedural grounds without reaching the underlying merits, "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Jurists of reason would not debate whether the state procedural rule is adequate to bar Petitioner's claims, or that Petitioner has not presented evidence demonstrating actual innocence. Therefore, this Court recommends that a COA should not be issued.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Respondent's Motion to Dismiss (Doc. No. 11) be **GRANTED**;

2. Petitioner's petition for a writ of habeas corpus (Doc. No. 1) be **DENIED**;

3. Petitioner's request for a certificate of appealability be **DENIED**; and

4. This action be **DISMISSED WITH PREJUDICE**.

Date: June 17, 2019.

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).